Mr. Justice Davis
delivered the opinion of the court:
On the theory that the order of the Secretary of War of March 9,1860, granting to Taliafero and Grant the privilege of furnishing and delivering at certain ports in Arizona, for two years, all the supplies that might be needed therefor the service, at certain stipulated rates, was a contract mutually binding on the Government and the claimant, the obligations imposed on the parties to it are clearly defined.
It wds the duty of the claimant, as well as his exclusive privilege, to furnish all the supplies which were needed for the use of the service in Arizona, and on the'receipt of the goods there, the Government was bound to pay him for them the prices which were fixed in the order. It is too plain for controversy, that the property did not vest in the United States until it was delivered. To escape the force of this rule at law, it is insisted, as the goods were inspected in Hew York and pronounced to be of the proper kind and quality, that the title then passed to the United States, and that they only remained in possession of the claimant for transportation, and as he was prevented from delivering them by the public enemy, the loss must be borne by the United States. This position cannot be sustained, for the inspection at New York, on which it is based, did not work a change of title in the property, nor was it in the contemplation of the parties that it should. It did not affect the contract at all. The goods, by a well-known usage of the War Department, had to be inspected somewhere, and as the contract con *55 tained nothing on tbe subject, it was for tbe advantage of tbe •contractor that they should be. inspected before shipment, rather than at the point of delivery. The War Department took upon itself no additional responsibility by inspecting them in New York, instead of Arizona, and this inspection in no wise relieved the claimant from any obligation which he had assumed. He had agreed to deliver the goods in Arizona, and until he did this there was no contract on the part of the Government, either expressed or implied, to pay him for them. All that the certificate of Major Eaton, the inspecting officer, proves, is, that the goods, when presented to him for inspection, were contained in strong, sound, full-hooped barrels, and well-secured tierces, properly marked with the names of the places to which they were destined, and were of the kind and quality usually provided by the Subsistence Department.
But it is said the capture of the property is chargeable to tbe delay of the War Department in making the inspection, and, in consequence of this, that the Government is not only bound to pay for the supplies which were taken possession of by the enemy, but also to re-imburse the claimant for the loss of his wagons and teams. The answer to this is, that the order of the 9th of March, 1860, did not require inspection at Boston or New York, and if the Secretary of War chose to change the order afterward, by directing that the goods should be inspected at those places, it was optional with the claimant, whether or not he would submit to such direction.
But, conceding that the Secretary of War had the right to direct where the goods should be inspected, still he was not required to inspect until the goods were substantially ready for inspection and he was notified of the fact, and it is plain, by . the finding of thé court below, that after such notice and actual readiness he did not culpably delay the inspection. The evidence shows very clearly that the difficulty which the agents of the claimant experienced in filling the requisition wuis the cause of the delay in inspecting and shipping the goods. If, however, it be admitted that the Government ivas in default in not inspecting sooner, that default had no connection with the subsequent injury suffered by the claimant, and was not the proximate cause of it. In such a case the rule of law applies, that where property is destroyed by accident, the party in whom the title is vested must bear the loss. (McConihe v. The New York and Erie R. R.. Co., 20 New York, 496.)
*56 It is insisted that this rule does not apply where private property is seized by the public enqmy without any default of the owner, and that in such a case the Government is bound to indemnify the sufferers. But the principles of public law do not sanction such a doctrine, and Vattel (page 403) says no action lies against the State for misfortunes of this nature. “They are accidents caused by inevitable necessity, and must be borne by those on whom they happen to fall.”
Whether there are equities in this particular case, and if so whether they require that the claimant should be re-imbursed, in whole or in part, for the capture of his property under the 'circumstances, are questions that must be addressed to Congress, for it is not the province of the judicial department of the Government to determine them.
The only remaining point in the case relates to the rescission by Secretary Cameron of the order of the 9th of March. This proceeding was undoubtedly taken because the supplies needed in Arizona could be either purchased there at cheaper rates, or forwarded more securely from Saint Louis.' Whether the conduct of the Secretary of War was or was not justifiable, is not a question to be considered in deciding this suit, for the claimant has not shown a state of case on which he could recover if the rescinding order had never been made. The contract entitled him to furnish, at certain prices, all the supplies that might be needed in Arizona until the 20th of March, 1862. To enable him to recover for a breach of this contract, he should have proved that supplies were needed at the posts in Arizona after the rescinding order was made, and the pecuniary loss he sustained in not being allowed to furnish them. This he has wholly failed to do.
Wecannot see that this is a case for even nominal damages; but if it is, the Court of Claims was not instituted to try such a case.
JUDGMENT AFFIRMED.